IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOTAL PETROLEUM PUERTO RICO CORPORATION,

Plaintiff

v.

JAVIER TORRES-CARABALLO, his wife, NERIMAR PÉREZ-MALDONADO, THE CONJUGAL PARTNERSHIP BETWEEN THEM; HIRAM ANDREU-SOTO, his wife, NORA BENABÉ, THE CONJUGAL PARTNERSHIP BETWEEN THEM; JOSÉ MANUEL BENABÉ-BENABÉ; JULIO C. LÓPEZ, his wife, CARMEN HIYDA MERCADO-REYES, THE CONJUGAL PARTNERSHIP BETWEEN THEM; ALUMA CONSTRUCTION, CORP.; S-S SERVICE STATION, INC.; JOSÉ L. CRESPO, his wife, ANITA VÁZQUEZ-MULERO, THE CONJUGAL PARTNERSHIP BETWEEN THEM; SANTOS PABÓN-GARCÍA; JOSÉ ANTONIO PABÓN-GARCÍA, his wife ELIZABETH SANTIAGO RIVERA, THE CONJUGAL PARTNERSHIP BETWEEN THEM; SIXTO PABÓN-GARCÍA; MICADA DE PUERTO RICO, INC.; OTHER UNKNOWN PARTIES A, B, C,

Defendants

CIVIL 09-1402 (CCC)

OPINION AND ORDER
REGARDING DOCKET 28

CIVIL 09-1402 (CCC)                              2

On May 1, 2009, Total filed a verified complaint against, among others, Santos Pabón-García; José Antonio Pabón-García, his wife Elizabeth Santiago-Rivera, the conjugal partnership between them, Sixto Pabón-García, owners of a former Esso service station in Patillas Puerto Rico.  Total alleges trademark infringement for violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; for violation of Section 34 of the Lanham Act, 15 U.S.C. § 1116; for violation of Section 35 of the Lanham Act, 15 U.S.C. § 1117; and for violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.  (Docket No. 1, at 2, ¶ 3.)  TOTAL also filed a motion for temporary restraining order or preliminary injunction on the same date, based upon the defendants' violation of trademark law.

The Pabón defendants opposed the request for injunctive relief and further moved to dismiss the complaint on May 18, 2009.  (Docket No. 21.)  On the following day, May 19, Total moved to strike the argument of the Pabón defendants that Total's business scheme is not covered by the Petroleum Marketing Practices Act due to the doctrine of issue preclusion and judicial estoppel. (Docket No. 28.)  Total protests the Pabóns arguing that neither it nor its parent company is the refiner of the gasoline that is sold at Total service stations and that therefore Total's business scheme falls outside the reach and protection of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2806.

CIVIL 09-1402 (CCC)                              3

In the body of its memorandum, Total discusses the doctrine of claim preclusion (res judicata) as well as the doctrine of judicial estoppel.

In order for res judicata or claim preclusion to apply, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Pérez v. Volvo Car Corp., 247 F.3d 303, 311 (1st Cir. 2001) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).  There must be "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits."  Id. (quoting González v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994)); see Martínez v. Puerto Rico, 594 F. Supp. 2d 181, 185 (D.P.R. 2009).  I dispose of this argument fairly quickly since there is definitely no prior judgment simply because I have issued opinions and orders in five consolidated cases prior to the arguments being raised in the Pabóns' motion to dismiss.  That litigation is ongoing and while a decision was made in denying a request for permanent injunction, no final judgment was then entered.  See Fed. R. Civ. P. 54(b); cf. Meléndez v. Autogermana, Inc., 606 F. Supp. 2d 189, 200 (D.P.R. 2009).  Total may wish that a final judgment was entered and that the doctrine of res judicata or claim preclusion applies. As Caesar commented long ago about the gullibility of the Gauls planning to attack a legion camp, men willingly believe what they

CIVIL 09-1402 (CCC)                            4

wish.[1]  Julius Caesar, The Gallic Wars, Book 3.   While the order had a degree of finality attached to it, I did not enter a final judgment in denying the request for injunction.  Such a judgment must be not only final but unappealable.  See H & R Block Tax Serv., Inc. v. Rivera-Alicea, 570 F. Supp. 2d 255, 265 (D.P.R. 2008) (citing Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000)).   Notwithstanding TOTAL's argument, the order is yet appealable.

   Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987). The doctrine "should be employed when a litigant is 'playing fast and loose with the courts' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"  Id. (quoting Scarano v. Cent. R. Co., 203 F.2d 510, 513 (3d Cir. 1953)).  Total argues that the Pabóns never raised the issue in the other case that Total did not sell petroleum products under a refiner trademark, a claim which should have been raised in Civil 08-1950.  Total notes that the Pabóns have always argued that Total's franchise offers did not comply with the PMPA, and that now they argue a different position, alleging that Total's retailers sell gasoline under a trademark controlled or owned by Total.  However neither Total nor its parent company are

---

[1]Fere libenter homines id quod volunt credunt.

CIVIL 09-1402 (CCC)                          5

the refineries of the gasoline that is sold at the service stations.  Since Total is merely a distributor according to the Pabóns, Total's business scheme falls outside the reach and protection of the Petroleum Marketing Practices Act.

The Pabóns opposed the motion to strike on May 21, 2009.  (Docket No. 37.)  They discuss the doctrine of unclean hands in that Total has not operated under the PMPA since at least 2004, nor has it offered a PMPA franchise agreement to service station operators in the Puerto Rico market.  That is because an essential condition of a PMPA franchise agreement is that the gasoline must be sold under the trademark of the refinery that supplies the fuel.  The Pabóns cite Merlino v. Getty Petroleum Corp., 916 F.2d 52, 53 (2d Cir. 1990) and Riverdale Enter., Inc. v. Shell Oil Co., 41 F. Supp. 2d 56, 67 (D. Mass. 1999), as supporting their position.

In Merlino v. Getty Petroleum Corp., the district court had dismissed the complaint under the PMPA because none of the defendants was a petroleum refiner.  Getty Petroleum, a distributor, was not related or affiliated to a refinery which controlled its own trademark.  The retailer in Merlino was using its trademark and not the trademark of the refiner that supplied the fuel at their stations.  In Merlino, the court in *dicta* made it clear that the PMPA was "designed to regulate the marketing practices of large, vertically integrated oil companies. We see no indication that Congress intended to reach non-integrated entities such

CIVIL 09-1402 (CCC)                              6

as non-refiner-distributors who control their own trademarks." Merlino v. Getty Petroleum Corp., 916 F.2d at 53-54. This case does not control the present scenario. Similarly, in Riverdale, the court did not grant injunctive relief against an agreement provision for the sale of unbranded gasoline, but rather severed the term providing for such sale from the franchise agreement under 15 U.S.C. § 2805(f)(1)(A).

The Pabóns stress that misleading testimony in the previous case is precisely what allowed Total to take over Esso retailers and implement a deceitful, misleading marketing scheme using the marks at issue in this case, of which its retailers are unwilling aiders and abettors.

Stressing that Total's hands are "unclean," the Pabóns also stress that the court cannot be an accomplice of a fraud on the Puerto Rico consumer, or Total retailers. Minds may differ as to the application of the PMPA, existence of a PMPA franchise offer, terms of a lease agreement, or heavy handed manner of dealing, but I have yet to see any attempt to deceive on the part of Total. It has never been a secret that the gasoline that is sold in Puerto Rico comes from Hovensa and there is no evidence that unbranded gasoline is purchased on the high seas, but it is clear that Esso bought its gasoline from the Hovensa refinery in St. Croix as does Total. As Mr. Félix Bermúdez, Total Petroleum's real estate manager in Puerto Rico, testified at the hearing held on May 20, 2009, Total once purchased

CIVIL 09-1402 (CCC)                              7

gasoline from CITGO, but after November 2004, when CITGO informed retailers they could no longer use the CITGO trademark, Total decided to purchase gasoline from suppliers other than CITGO, such as Shell, Peerless, Capeco, Texaco, and Esso, who were suppliers in the market at that moment. At the time, only Shell had a refinery in Puerto Rico. Mr. Bermúdez thus assumed that the gasoline products must have been bought from Shell. Taking this into account, and the very nature of the industry, the entire importation and distribution process is public or at least not a nefarious plot. The argument of a fraud being perpetrated on the court or the consumer is lost. And with the specialized knowledge that gasoline service operators have in the retail business, it is difficult to believe that they have suddenly become conveniently naive under Total contracts when under the Esso contracts, the gasoline came from the same place. See Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), Inc., 582 F. Supp. 2d 154, 157 (D.P.R. 2008), vacated in part by 2009 WL 87586 (D.P.R. Jan. 12, 2009).

In relation to the doctrine of judicial estoppel, "the First Circuit has implied . . . that in the absence of 'deliberate dishonesty [or] . . . any serious prejudice to judicial proceedings or the position of the opposing party,' the doctrine should not be applied." UNUM Corp. v. United States, 886 F. Supp. 150, 158  (D. Me. 1995) (quoting Desjardins v. Van Buren Cmty. Hosp., 37 F.3d 21, 23 (1st Cir.

CIVIL 09-1402 (CCC)                              8

1994)).  Since these factors do not exist, and since the Pabóns are not playing fast and loose with the court, judicial estoppel does not apply.

The motion to strike argument based on the doctrine of issue preclusion and judicial estoppel is therefore denied.

At San Juan, Puerto Rico, this 18th day of June,  2009.

                                                      S/ JUSTO ARENAS
                              Chief United States Magistrate Judge