IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOTAL PETROLEUM PUERTO RICO
CORPORATION,

Plaintiff

v.

JAVIER TORRES-CARABALLO, his
wife, NERIMAR PÉREZ-MALDONADO,
THE CONJUGAL PARTNERSHIP
BETWEEN THEM; HIRAM ANDREU-
SOTO, his wife, NORA BENABÉ, THE
CONJUGAL PARTNERSHIP BETWEEN
THEM; JOSÉ MANUEL BENABÉ-
BENABÉ; JULIO C. LÓPEZ, his wife,
CARMEN HIYDA MERCADO-REYES,
THE CONJUGAL PARTNERSHIP
BETWEEN THEM; ALUMA
CONSTRUCTION, CORP.; S-S
SERVICE STATION, INC.; JOSÉ L.
CRESPO, his wife, ANITA VÁZQUEZ-
MULERO, THE CONJUGAL
PARTNERSHIP BETWEEN THEM;
SANTOS PABÓN-GARCÍA; JOSÉ
ANTONIO PABÓN-GARCÍA, his wife
ELIZABETH SANTIAGO RIVERA, THE
CONJUGAL PARTNERSHIP BETWEEN
THEM; SIXTO PABÓN-GARCÍA;
MICADA DE PUERTO RICO, INC.;
OTHER UNKNOWN PARTIES A, B, C,,

Defendants

CIVIL 09-1402 (CCC)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CIVIL 09-1402 (CCC)                    2

On May 1, 2009, Total Petroleum Puerto Rico Corporation (Total) filed a verified complaint against defendants, all former Esso gasoline service station franchisees including Santos Pabón-García; José Antonio Pabón-García, his wife Elizabeth Santiago-Rivera, the conjugal partnership between them; and Sixto Pabón-García.  Total alleges trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; for violation of Section 34 of the Lanham Act, 15 U.S.C. § 1116; for violation of Section 35 of the Lanham Act, 15 U.S.C. § 1117; and for of Section 43 of the Lanham Act, 15 U.S.C. § 1125.  (Docket No. 1, at 2, ¶ 3.)   In this respect, Total claims trademark infringement, unfair competition, the "passing off" of non-branded goods as those of Total, and passing counterfeit products, false designation of origin, and dilution and tarnishment. (Docket No. 1, at 29-34).  Furthermore, supplemental jurisdiction is also asserted over state claims.

In relation to the Pabón defendants, owners of a gasoline service station in Patillas, Puerto Rico, a lease agreement with Esso was entered into in relation to the real property where the service station is located, with Esso as leaseholder, and the defendants as the landlord.  The equipment at the station is now owned by Total, except for the gasoline storage tanks which are owned by the Pabóns. The lease was assigned to Total by Esso last year but the defendants refuse to accept the franchise offer made by Total for reasons set forth in their

CIVIL 09-1402 (CCC)                    3

memorandum and described by one of the parties during a hearing held on May 20, 2009.  The Pabóns continue to have possession of their gasoline service station and sell non-branded gasolines.

This matter is before the court on request for an order to show cause as to why a motion for temporary restraining order and/or preliminary injunction filed by plaintiff Total Petroleum Puerto Rico Corporation should not be issued against the defendants.  (Docket No. 2, at 1-2, May 1, 2009.)

Plaintiff seeks to have the defendants immediately cease using, infringing, tarnishing or otherwise using, exhibiting or altering the Total Marks; immediately cease selling non Total petroleum products from the Patillas service station; immediately surrender control and possession over the service station and all equipment for the storage and sale of petroleum products leased or owned by Total to the defendants.  (Docket No. 2-2, at 2.)

Having considered the evidence presented at the evidentiary hearing, and the arguments of the parties, I recommend that this court GRANT IN PART AND DENY IN PART Total's request for a preliminary injunction for the reasons set forth below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Pabón brothers own the real property of the service station located at Road No. 3, Km. 123 in Patillas, Puerto Rico.  On November 4, 1998, Esso entered

CIVIL 09-1402 (CCC)                    4

into a lease agreement with the Pabón brothers regarding that real property.  The purpose of the lease was to operate a gasoline service station on the premises.  The Esso lease agreement contains an expiration date of October 31, 2018.  The agreement provided for the rent amount to be directly proportional to the amount of purchases of petroleum products from the company, the greater the amount of the purchases, the greater the rent.  The equipment for the sale of gasoline and other products would be the property of Esso.

In March 2008, the Pabóns received a termination notice from Esso as well as notice that Esso's rights, privileges and obligations were being transferred to Total.  See Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d 154, 179-80 (D.P.R. 2008), vacated in part by 2009 WL 87586 (D.P.R. Jan. 12, 2009).  The Pabóns were also notified of the transfer of the equipment for the storage and sale of petroleum products.  Total alleges that the Pabóns at present have complete control of the station and that the station bears the signs, trade dress and/or color patterns, the use of which is reserved to Total.  The gasoline station is now selling non-branded gasoline to customers.  (See Docket No. 1-31 to No. 1-38, Ex. 10-A to 10-H; Docket No. 1-108, Ex. 30-D.)

On May 18, 2009, the Pabóns filed an opposition to plaintiff's request for injunctive relief and a motion to dismiss with prejudice.  (Docket No. 21.)  They note that when they were offered an agreement by Total in November 2008, the

CIVIL 09-1402 (CCC)                    5

agreement differed from that which the Pabóns had had with Esso in two material ways.  First, the agreement reduced the lease term from ten years to three years, thus cutting seven years from the lease term.  Second, the Pabóns would no longer sell gasoline under the trademark of the refinery that supplied the gasoline. Instead, the gasoline would be sold under the mark of the distributor.

The Pabóns argue that the Petroleum Marketing Practices Act applies only to franchise agreements whereby the retailer sells gasoline under a trademark that is owned by the refiner that supplies the fuel that is sold to the station, citing Merlino v. Getty Petroleum Corp., 916 F.2d 52, 53 (2d Cir. 1990); see Riverdale Enter., Inc. v. Shell Oil, 41 F. Supp. 2d 56, 67 (D. Mass. 1999).  The Pabóns argue that plaintiff's marketing scheme is unlawful and inequitable because the petroleum fuel is sold in Total's service stations under a trademark that is not owned by the refiner of those fuels.  See Clinton E. Worden & Co. v. Cal. Fig Syrup Co., 187 U.S. 516, 528 (1903); Erva Pharm., Inc. v. Am. Cyanamid Co., 755 F. Supp. 36, 40 (D.P.R. 1991).

The current agreement that Total has with its service station operators allows it to dictate, at its discretion, which gasoline will be sold at the service station.  The Pabóns argue that Total is a naked licensee of its parent company because it reserved the right to sell any gasoline.  Therefore, the license is unlawful and the mark is considered abandoned.  See, e.g., Barcamerica Int'l

CIVIL 09-1402 (CCC)                    6

U.S.A. Trust v. Tyfield Importers Inc., 289 F.3d 589, 595-96 (9th Cir. 2002);

Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 871 (10th Cir. 1995).

The Pabóns argue further that Esso's physical abandonment of its equipment precludes actions for trademark infringement and that the reason the equipment is still at the station is that it has been abandoned by Esso.  That is because the equipment was not removed within 120 days of the termination of the lease agreement.  Thus, the Pabóns arguably cannot be charged with a trademark infringement which has been caused by the trademark owner's inaction.

In the transition from Esso to Total, Esso had lettering and marks removed on September 16, 2008 but allowed the Esso oval sign to remain.  (See Docket No. 1-32, Ex. 10-B; Docket No. 1-34, Ex. 10-D; Docket No. 21-2, at 9, Ex. D.) It still remains at the station and appears to be covered with a blue tarp.  There is no information to reflect that Total has made overtures to remove the Esso oval and other than the placement of a rudimentary blue cover, the Pabóns have abstained from touching the sign which does not belong to them.

The Pabóns argue that Esso left the allegedly infringing products, the oval sign and the gasoline dispensers, at the site.  Esso could have removed the same and did not.  Total thus cannot allege a trademark violation of Esso's mark, and in any event, such a violation would have been caused not by the Pabóns but by Esso itself which purposefully removed other marks and signs but allowed the

CIVIL 09-1402 (CCC)                    7

Esso oval sign.  In short, the Pabóns argue that the doctrine of unclean hands bars relief.  See Worthington v. Anderson, 386 F.3d 1314, 1320-21 (10th Cir. 2004).

The Pabóns also argue that Total does not have standing to assert an action for trademark infringement under section 1114(1)(a) of the Lanham Act because relief is restricted only to trademark registrants.  See Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 159 (1st Cir. 1977); Shell Co. v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d 193, 202 (D.P.R. 2008).  However, Total states in the verified complaint that it has the legal authority to use the Total marks and color patterns in Puerto Rico.  (Docket No. 1, at 6, ¶ 15.)  It does not allege that it is the owner of the trademarks.  There is no mention in the verified complaint as to whether the trademarks are registered or not.

Finally, the Pabóns argue that Total cannot evict the Pabóns from their own property, noting that the underground storage tanks belonged not to Esso, belong not to Total, but rather belong to themselves.  The service station operation agreement signed by Esso and the Pabóns in 2000 clearly notes the equipment that remains the property of Esso, and the underground gasoline storage tanks are not included on the list.  This was confirmed by plaintiff's counsel at the evidentiary hearing of May 20, 2009.

CIVIL 09-1402 (CCC)                    8

On June 2, 2009, Total filed an opposition to the May 18 motion to show cause and/or motion to dismiss. (Docket No. 50.) Total addresses each of the points that the Pabóns have raised. It stresses that the business relationship between the parties is a lease/lease-back agreement which is not conditioned upon the Pabóns operating the station. It argues that since the Pabóns opted to reject the franchise offer by Total, they have lost any rights to retain possession over the station, and are obliged to allow Total to hold control over the property by virtue of the existing lease. (Docket No. 50, at 3.) The Pabóns leased the property to Esso subject to the terms and conditions included in the lease. Esso then subleased the property to the Pabóns and assigned its rights under the lease to Total, which offered the sublease to the Pabóns, who rejected the same. Total thus argues that the Pabóns have lost the right to retain the possession or control over the station even though they own the real property.

Total replies to the Pabóns' argument that they are not using the trade dress or color patterns of Esso, by citing to the criteria set forth by the circuit court in order to determine confusion in trademark cases. Total stresses that the Pabóns are clearly using the same trade dress and color patterns as used by Total in the former Esso sites. Total replies to the Pabóns' allegation that Total has unclean hands and has acted in an inequitable manner because it has failed to remove the gasoline dispensers and the overall signs located at the station within

CIVIL 09-1402 (CCC)                    9

120 days of the termination of the lease, thus trapping the Pabóns into using the dispensers and other signs if they wanted to sell gasoline.  (Docket No. 50, at 7.) Because the Pabóns rejected the franchise offer, Total argues that they have surrendered their right to retain possession over the station.

The Pabóns argue that Total has been granted a naked license which occurs when a licensor allows a licensee to use the mark as it wishes, thus weakening the strength of the mark and leading to the abandonment of the same.  Total stresses that Esso imposed certain restrictions on Total's ability to use its trademark and color patterns.  (See Docket No. 1-96, Ex. 29.)  Those limitations include the aspect of the trade dress and color patterns to be used on the canopy logos, fascia logos, spreaders and dispensers for a period not to exceed 12 months.  Reflecting a lack of abandonment is Esso's reserving the right to obtain a preliminary injunction as to Total if the trade dress and color patterns are used in violation of the authorizations.  (Docket No. 50, at 11-12.)

Total replies to the attack that the Pabóns were not offered a franchise covered by the Petroleum Marketing Practices Act, emphasizing the lack of candor on the part of the Pabóns in using the definitions of the industry terms in ways contrary to the statutory meanings.  For example, in using the term refiner, the Pabóns are narrow in their use of the term while the PMPA is broad in its use, leading to the inclusion of any affiliate of such person, person meaning the refiner.

CIVIL 09-1402 (CCC)                          10

See 15 U.S.C. § 2801(5).  Total stresses that it is a refiner by statutory definition, which provides that a refiner is a person engaged in the refining of crude to produce motor fuel or includes any affiliate of such person.  It takes issue with the Pabóns' accusation as to unclean hands and non-compliance with the PMPA based upon the purchase of gasoline from a refinery and not distributing such gasoline under the refinery's trademark.  Total emphasizes that the result of adopting this argument would be that all retailers in Puerto Rico would be deprived of the protection of the PMPA because all of the gasoline sold to retailers in Puerto Rico is purchased by the main gasoline wholesalers from Hovensa, the refinery located in St. Croix.  None of the gasoline is sold under the trademark of that refinery.  And regardless of whether a three or ten-year lease was offered by Total, this change in the terms the lease agreement is not a defense to a Lanham Act violation.

EVIDENTIARY HEARING

At the evidentiary hearing held on May 20, 2009, plaintiff presented the testimony of Félix Fernando Bermúdez Vega who has been Total Petroleum's real estate manager in Puerto Rico since November, 2008, and is the person who verified the complaint.  He stated that Total trademarks include the Total brand itself, as well as "Bonjour", and "La Boutique."  Total does not use the brand Esso although it is authorized to use the lines, color patterns and "dress trade" (trade

CIVIL 09-1402 (CCC)                    11

dress) as part of an agreement between Esso and Total.  Total does not sell Esso products and is not authorized to sell Esso products.  He stated that the color pattern of Esso is registered at the United States Trademark Office, but he does not know the registration number.  Exxon Mobil is the registrant.  Neither Esso nor Exxon have authorized Total to sell any kind of gasoline.

The Bonjour trademark is registered in Puerto Rico.  The Total brand is registered in the United States Trademark Office, although Total Puerto Rico is not the registrant.  Nor is Total Puerto Rico the registrant of La Boutique and Bonjour.

Mr. Bermúdez stated that the Total brand is used to sell petroleum products and its derivatives.  Total is not used in the United States at the retail level and there are no Total gasoline service stations in the United States.  Total Outre Mer authorizes the use of the Bonjour trademark.  Total SA owns the Total mark, and has authorized Total Puerto Rico to use the mark, as well as the marks for Bonjour and La Boutique, as per an agreement between the companies.

Mr. Bermúdez explained that in Puerto Rico there are no refineries at the moment, and no outside refinery has authorized Total to sell gasoline at service stations in Puerto Rico.  Rather, Total buys the gasoline.  No outside refinery has authorized Total to use its trademark.  At one time, CITGO International sold gasoline to Total Puerto Rico under the CITGO trademark.  (Docket No. 21-2, at 11, Ex. E.)  In November  2004, CITGO informed retailers they could no longer

CIVIL 09-1402 (CCC)                    12

use the CITGO mark.   Total Puerto Rico then decided to purchase gasoline from other suppliers, such as Shell, Peerless, Capeco, Texaco, and Esso, who were suppliers in the market at that moment.  At that time, Shell was the only refinery in Puerto Rico so the products must have been bought from them.  Shell did not authorize Total to sell its trademarked gasoline in Puerto Rico.  Aside from the Shell refinery, Total also received gasoline from other refineries.  All the products in Puerto Rico are now bought from the Hovensa refinery in St. Croix.   Mr. Bermúdez did not know when Total stopped buying gasoline from Shell.  Total stopped buying from the others once it had the transaction with Esso, which stopped operations here on October 31, 2008.  Since November 1, 2008, all of Total's gasoline is purchased from the refinery in St. Croix, and Total is not authorized by the St. Croix refinery to use its trademark in selling gasoline in Puerto Rico.  He also noted that the management of Total Puerto Rico decides which petroleum and its derivatives will be sold in the Puerto Rico market under the Total brand, at its total discretion.

In relation to the Pabón gasoline service station in Patillas, Mr. Bermúdez noted that the Pabóns are not using the Total Brand.  Nor are they using the Bonjour mark, or the La Boutique mark.

Mr. Bermúdez explained that Total SA owns the mark and is the parent company of Total Ultramer, which is the parent company of Total Puerto Rico.

CIVIL 09-1402 (CCC)                    13

The St. Croix refinery refines through the Total mark, and Total Puerto Rico is authorized to sell under the trademark.  Total is also authorized to use the Esso trade dress.  Esso's trademark and trade dress are registered with the United States Patent Office, and Total is authorized to use the Esso color patterns which were used by Esso at its Puerto Rico service stations before October 2008.  The difference in the dress is that the Esso letters were eliminated and replaced by the Total letters.  Only the letters were taken out of the fascias of the canopies and the letters Esso were taken out of the signs of gasoline dispensers.  This occurred during the transitional debranding process.

Mr. Bermúdez explained that in the purchase of assets, Total obtained 141 stations from Esso.  Ten of them were not operating and did not become Total franchisees, thus leaving 131 sites which became Total stations.  Some of those did not become Total franchisees.  The vast majority of the Total island stations operate under the Total brand with the same patterns and dress of the Pabón brothers' gasoline service station.  All stations under contracts which are signed have the Total brand installed, although there are people that think that Esso is still operating in Puerto Rico.

Sixto Pabón-García testified that he is married to Elizabeth Santiago-Rivera, and is the  brother of Santos Pabón and José Antonio Pabón.  He is an attorney and has been in practice for 33 years.  He said that the Pabóns and Esso had a

CIVIL 09-1402 (CCC)                    14

lease/lease-back relationship.   In September 2008, Esso communicated with the

Pabóns, (Docket No. 21-2, at 8, Ex. C), about removal of the ESSO equipment to

Santos Pabón, although Sixto Pabón did not receive the communication.   A fax

from engineer Miguel Vázquez and the Esso Oil Company referring to the partial

removal of signs was sent on September 15, 2008.   The letter reads:

> Dear dealer, as part of the transition process of the
> network of service stations,  ESSO Standard Oil, (ESSO),
> a program is taking place to partially remove some of the
> signs of its proprietary trademarks and logo types.  This
> process will take place in your station on September 16,
> 2008  during  working  hours.   ESSO  has  hired  Roque
> Schmidt Oil and Image Builders Company (Multiplastic),
> to carry out the removal of the signs and the logos types
> belonging to ESSO.  The ESSO logo in the main sign of
> the station (Main ID), will not be removed at this time.
> If  you  have  any  doubt  regarding  this  process,  I  will
> appreciate that you communicate with me or with your
> sales representative.  We will appreciate in advance your
> cooperation and the execution of this activity.  Cordially,
> Miguel Vázquez, Esso Standard Oil Company.

(Docket No. 39-2, Tr. of Preliminary Hearing, at 41:18-25, at 42:1-6.)

ESSO  then  sent  a  group  of  people  over  and  they  removed  all  of  the

distinctive signs of the Esso company.   They left the Esso oval behind, and the

Pabóns contracted people to put a cover on it so that the company would not be

identified.   An Esso supervisor returned and verified all facilities and identified

some markings which he felt still identified the company.   As a result of that, the

original  group  returned  and  took  away  all  of  the  signs  referred  to.   After  the

CIVIL 09-1402 (CCC)                          15

second visit, nobody from Total has returned and Total has never been there.

When the Pabóns received the lease back contract, examined it and consulted with other lawyers, they decided that the contract was not equitable like the original contract.  There was no negotiation between the parties and the contract was presented on a take-it-or-leave-it basis.  Santos Pabón called Total and indicated that he was not in agreement.  Total emphasized that Pabón could "take it or leave it."  The Patillas station is operating at the present, and the Pabóns buy unbranded gasoline in the free market.  Mr. Pabón noted that in the Esso lease/lease-back arrangement, the parties made reciprocal concessions.  The original contract had been for 20 years, and it had a balance of 10 years, but Total offered three years.  Mr. Pabón believes that Total did not offer a contract under the Petroleum Marketing Practices Act.

## II.  DISCUSSION

The purpose of the Lanham Act is to "protect consumers from being misled and [to] protect producers from unfair practices [from] competitors."  Gen. Council of Assemblies of God v. Fraternidad de Iglesia de Asamblea de Dios Autónoma Hispana, Inc., 382 F. Supp. 2d 315, 322 (D.P.R. 2005) (citing Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 428 (2003)).  It thus "broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service."  Id.

CIVIL 09-1402 (CCC)                    16

Total claims that defendants are using signs, trade dress and/or color patterns, the use of which is authorized only by Total.  (Docket No. 1, at 16, ¶ 60.)  Total further claims that such actions are causing confusion, deception, and mistake and will deceive consumers as to the origin, licensing and endorsing by Total of defendants' operation of the gasoline service station.  (Id. at 29, ¶ 115.) Total argues further that the defendants' acts create a false, misleading impression that the defendants' goods are the same goods distributed by Total, or associated or connected with Total, or have the sponsorship, endorsement or approval of Total.  (Id. at 29, ¶ 117.)

The First Circuit uses a quadripartite test for determining whether litigants are entitled to preliminary injunction redress.  Under this framework, trial courts must consider "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest."  Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quoting United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007)); Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996) (citing Weaver v. Henderson, 984 F.2d 11, 12 & n.3 (1st Cir. 1993); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991)); see also DeNovellis v. Shalala, 135 F.3d

CIVIL 09-1402 (CCC)                    17

58, 62 (1st Cir. 1998); Total Petroleum P.R. Corp. v. Colón-Colón, 577 F. Supp.

2d 537, 549 (D.P.R. 2008); Telerep Caribe, Inc. v. Zambrano, 146 F. Supp. 2d

134, 137 (D.P.R. 2001).

(1) LIKELIHOOD OF SUCCESS ON THE MERITS

To determine the likelihood of plaintiff's success on the merits of the claim,

the court must examine the claims under the Trademark Dilution Revision Act and

the Lanham Act.

In pertinent part, the Trademark Dilution Revision Act states:

(c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

In trademark infringement cases, the movant must show that prospective buyers/clients are "likely to be confused as to the product's source." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998). "[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably

CIVIL 09-1402 (CCC)                    18

> prudent purchasers exercising ordinary care." <u>Int'l Ass'n</u>
> <u>of Machinists & Aerospace Workers, AFL-CIO v. Winship</u>
> <u>Green Nursing Ctr.</u>, 103 F.3d 196, 201 (1st Cir. 1996.)

<u>Total Petroleum P.R. Corp. v. Colón-Colón</u>, 577 F. Supp. 2d at 550.  There must

be "a 'substantial' likelihood of confusion–not a mere possibility. . . . "  <u>Star Fin.</u>

<u>Serv., Inc. v. Aastar Mortgage Corp.</u>, 89 F.3d 5, 10 (1st Cir. 1996); <u>see</u>

<u>Purolator, Inc. v. EFRA Distrib., Inc.</u>, 524 F. Supp. 471, 474-77 (D.P.R. 1981).

      In examining the likelihood of confusion, the First Circuit focuses on eight

factors, known as the Pignons factors, <u>see</u> <u>Pignons S.A. de Mecanique de Precision</u>

<u>v. Polaroid Corp.</u>, 657 F.2d 482, 487 (1st Cir. 1981), which are as follows:

> (1) the similarity of the marks; (2) the similarity of the
> goods; (3) the relationship between the parties' channels
> of trade; (4) the relationship between the parties'
> advertising; (5) the classes of prospective purchasers;
> (6) evidence of actual confusion; (7) the defendant's
> intent in adopting its mark; and (8) the strength of the
> plaintiff's mark. . . .   No one factor is necessarily
> determinative, but each must be considered.

<u>I.P. Lund Trading ApS v. Kohler Co.</u>, 163 F.3d 27, 43 (1st Cir. 1998) (quoting

<u>Boston Athletic Ass'n v. Sullivan</u>, 867 F.2d 22, 29 (1st Cir. 1989)); <u>see</u> <u>Boston</u>

<u>Duck Tours, LP v. Super Duck Tours, LLC</u>, 531 F.3d at 10 n.6; <u>Total Petroleum</u>

<u>P.R. Corp. v. Colón-Colón</u>, 577 F. Supp. 2d at 550.  With those factors in mind,

I consider which ones favor plaintiff.

      First, the similarity of the trade dress and color patterns approach identity

since the color patterns used by the Pabóns are the same as previously used by

CIVIL 09-1402 (CCC)                    19

Esso and currently used by Total.  Similarly, the goods being marketed are the same.  Indeed, the gasoline pumps are pumping unbranded gasoline where they previously pumped Esso branded gasoline.  The franchisee has continued to use the trade dress and color patterns of the one-time franchisor, Esso, whose dress and patterns are authorized to be used by Total.  The Pabóns may also be using such dress and patterns to identify goods that are not of the same quality or source as those previously identified with the Esso marks.  The continued use of the Total trade dress and/or color patterns can cause consumers to buy products in reliance on the misused trade dress.  As far as similarity is concerned, "[u]nder this factor, there is a strong likelihood of confusion."  Boston Athletic Ass'n v. Sullivan, 867 F.2d at 30 (quoting Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 818 (1st Cir. 1987)).

     The next three factors are treated together as a practice in this circuit. Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 3 n.3 (1st Cir. 1993) (citing Boston Athletic Ass'n v. Sullivan, 867 F.2d at 30; Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d at 818; Pignons S.A. v. Polaroid Corp., 657 F.2d at 488); Total Petroleum P.R. Corp. v. Colón-Colón, 577 F. Supp. 2d at 550.

> Plaintiff and defendants operate in the same trade.  The classes of prospective purchasers are identical.  The same customers that have used the station since its start as [an Esso] station are the same customers defendants

CIVIL 09-1402 (CCC)                          20

> hope to attract.  "Few harms are more corrosive in the
> marketplace than the inability of a trademark holder to
> control the quality of bogus articles thought (erroneously)
> to derive from it."

Total Petroleum P.R. Corp. v. Colón-Colón, 577 F. Supp. 2d at 550-51 (citing

Hypertherm, Inc. v. Precision Prod., Inc., 832 F.2d 697, 700 (1st Cir. 1987)).

Total argues that the Pabón defendants have covered or tried to cover the

Esso oval, which could evidence an intent to infringe or misuse the Total marks

and trade dress since it is commonly known that Total has inherited the Esso

business in Puerto Rico.  While there is an apparent intent to avoid infringement

of Esso's trademarks by unsuccessfully veiling some of the oval mark, it can

certainly be concluded that the Pabóns are relying on Esso's marks and colors to

attract customers.  Cf. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d

at 36.  Indeed, the Esso oval belonged to Esso, and now for a limited time belongs

to Total, which chose not to remove it when it removed other evidence of its

marks, on two separate occasions.

Compliance with the Petroleum Marketing Practices Act

The Pabóns argue that Total has not and does not comply with the

requirements of the PMPA while I have already decided that it has.  See Santiago-

Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 181-84.  That Total

has or has not complied with the requirements of the PMPA has no relevance to

its dilution by tarnishment claim under the Lanham Act unless Total is a naked

CIVIL 09-1402 (CCC)                    21

licensee, and only then if the Pabóns and Total had some type of agreement that their relationship was to be governed by the PMPA.  Since, however, they have no relationship other than that of lessor-lessee, and that relationship has not been recognized by the Pabóns, Total cannot now violate the PMPA vis-a-vis the Pabóns.  Were the PMPA to have been violated, Total would still have a viable Lanham Act claim.

Naked License/Abandonment

The Pabóns have argued that Total is a naked licensee of its parent company because it has reserved the right to sell any gasoline.  It is well established that "[a] trademark owner may grant a license and remain protected provided quality control of the goods and services sold under the trademark by the licensee is maintained."  Barcamerica Int'l, USA Trust v. Tyfield Imp., Inc., 289 F.3d at 595-96 (quoting Moore Bus. Forms, Inc. v. Ryu, 960 F.2d 486, 489 (5th Cir. 1992)).  "An uncontrolled license may provide the basis for an inference of abandonment of a trademark."  Proctor & Gamble Co. v. Quality King Distrib., Inc., 123 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (citations omitted).

As to the argument of abandonment of the mark, it is difficult to ignore the efforts that Total has gone to in order to defend its rights deriving from the purchase of Esso assets in Puerto Rico, including its leases with franchisees. Lanham Act counterclaims and amended counterclaims were filed in another case,

CIVIL 09-1402 (CCC)                    22

Civil 08-1950 (CCC) against these defendants by Total as intervenor on September 27, October 2, 21, and December 4, 2008.  See Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 256 F.R.D. 39, 43-48 (D.P.R. 2009).  In the counterclaims, Total identified the Pabón brothers as being part of a group of gasoline retailers who have refused to enter into a franchise with Total.  As to these and other counter-defendants, Total sought to have the retailers stop tarnishing, obliterating, and disparaging the Total marks and existing color patterns, and to stop diluting Total's trademarks, goodwill and reputation.  Total also sought to have these defendants stop altering or covering the Total brand name or existing color patterns, or promoting that they are associated with Total.  Total also sought the surrender of stations and underground storage tanks.  Contrary to the Pabóns' assertion that Total has a naked license, this continuous effort on the part of Total to enforce its acquired rights can hardly be classified as an abandonment of its trade dress or trade mark, or a failure of Total to police the licensee's operation.  See Gen. Motors Corp. v. Gibson Chem. & Oil Corp., 786 F.2d 105, 110 (2d Cir. 1986).  Indeed, "[t]he Lanham Act places an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his trademark by his licensees or suffer cancellation of his federal registration." Jordan K. Rand, Ltd. v. Lazoff Bros., Inc., 537 F. Supp. 587, 592-93 (D.P.R. 1982) (citing 15 U.S.C. § 1064).  There is no

CIVIL 09-1402 (CCC)                        23

evidence of abandonment or that Total is a naked licensee or that it intends to become a naked licensee.

Abandonment of Equipment

The Pabóns claim that the equipment has been abandoned by Esso.  If that is the case, the Pabóns may but are not required to remove the Esso oval.  Total may claim trademark infringement or tarnishment because of the presence of the veiled Esso oval, which it could have removed at any time since the Pabóns rejected the franchise agreement.  If it claims that the Pabóns are using the Esso oval to continue receiving the customers that Esso received, and to deceive them, then Total might have asked the Pabóns for permission to remove the abandoned oval rather than use the Esso oval sign as a trigger for a Lanham Act violation. "[A] court called upon to do equity should always consider  whether the petitioning party has acted in bad faith or with unclean hands." Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995) (citing Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945)).  While Total's actions may not reach the level of bad faith, Total's reliance in part on the covered Esso oval can arguably reflect unclean hands in its petition based upon a Lanham Act violation.  See, e.g., Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. at 814-15; Vaquería Tres Monjitas, Inc. v. LaBoy, 448 F. Supp. 2d 340, 350 n.11 (D.P.R. 2006).  The inquiry does not stop here.  Neither party has made

CIVIL 09-1402 (CCC)                    24

any effort to remove the Esso oval.  Principles of equity require a court to consider the actions and inaction of both sides.  See, e.g., Republic Molding Corp. v. B. W. Photo Util., 319 F.2d 347, 350 (9th Cir. 1963).  While Total has proffered no satisfactory reason why it has not removed the Esso oval from the Pabón's gasoline station by now, nor have the Pabóns offered a viable reason as to why they have done nothing about the offending sign except to use it to their benefit. Total's inaction does not leave it without any remedy.  Even without the Esso oval, there are sufficient violations of Total's trade dress to conclude that there is a likelihood of Total's prevailing on the merits.  The distinctive red and white trade dress inherited from Esso that now belongs to Total remains unaltered throughout the majority of the gasoline service stations according to the testimony of Mr. Bermúdez and the exhibits attached to the verified complaint.  Cf. Shell Co. v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d at 198.  As to the Pabóns' station in Patillas, the trade dress is identical to all other Total stations except that the white lettering is missing from the red background and the white skirt of the canopy fascia.  The pumps reflect the acquired debranding Total color pattern of green for premium gasoline and blue for regular gasoline.  These transitional colors are being exhibited under the agreement between Esso and Total.  Thus, the consumer can very well assume that the gasoline station, a former Esso station, is either a Total station or is in transition to become one.

CIVIL 09-1402 (CCC)                           25

Standing

The Pabóns argue that Esso's mark may be registered but that Total cannot have standing to bring an infringement action against them because it is not the registrant of the mark.  However, there are provisions of the Lanham Act that go beyond trademark protection, and section 43(a), 15 U.S.C. § 1125(a) is one such provision.  See Zyla v. Wadsworth, Div. of Thomson Corp., 360 F.3d 243, 251 (1st Cir. 2004).  The provision creates "a federal remedy against a person who used in commerce either 'a false designation or origin, or any false description or representation' in connection with 'any goods or services.'"  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003) (quoting § 43(a) of the Lanham Act, 60 Stat. 441, 15 U.S.C. § 1125(a)).  Total claims that the Pabóns are guilty of false designation of origin of the products they sell to the public.  Total "need not be the owner of a registered trademark in order to have standing to sue."  Stanfield v. Osborne Indus., Inc., 52 F.3d at 873 (citing Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 517 (10th Cir. 1987)).

"An infringement claim under section 32 [of the Lanham Act, 15 U.S.C. § 1114] requires that the mark be a federally registered trademark. Id. But a section 43(a) claim . . . does not require that the mark or name be federally registered, Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 160 (1st Cir. 1977), and is commonly used to prevent infringement of unregistered trademarks.

CIVIL 09-1402 (CCC)                       26

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.03 (3d ed. 1992)." PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 78-79 (1st Cir. 1996).

Equity

The Pabóns argue that they rejected the Total franchise agreement because it would no longer have permitted them to sell gasoline under the trademark of the refinery that supplied the gasoline to their station.  Clearly, neither Esso nor Total sold or sell gasoline under the trademark of the refinery supplying the gasoline in Puerto Rico, which is Hovensa.  The defendants contend that this practice of selling "unbranded" gasoline is improper or illegal.  During the Esso franchise, retailers purchased gasoline in the same fashion as Total does now, from the same refinery.  See Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 157.  Both Esso and Total own refineries but not in St. Croix and not the Hovensa refinery.  The argument is at best specious considering the fact that there have been no active refineries in Puerto Rico since Shell closed its operation.  While the gasoline would now be sold under the mark of the distributor, nothing has changed from last year except the identity of the distributor.  Thus, there is nothing that offends equity in the manner in which Total conducts business with Hovensa in supplying its retailers in Puerto Rico, and

CIVIL 09-1402 (CCC)                    27

there is certainly no secret plot to fool the consumer as to the source of the

gasoline he is purchasing at the pump.[1]

      After examining the above factors, the likelihood of confusion caused by the

Pabóns using plaintiff's trade dress and color patterns is very high, and therefore,

plaintiff has demonstrated likelihood of success on the merits.

                    (2) SIGNIFICANT RISK OF IRREPARABLE HARM

      Plaintiff contends that irreparable harm will result absent an injunction

because (1) there is no adequate remedy at law for the harm to its reputation in

the area; (2) Total has been prevented from exercising its right to use the

gasoline service station and use it for commercial gain; (3) Total cannot monitor

the equipment which it owns to ensure compliance with environmental standards;

difficulty of proving damages; and (4) because of the trademark harms discussed

earlier.  It argues that the defendants' actions have a diluting and detrimental

effect over Total's goodwill, reputation and brand, since consumers have been

informed that Esso stations would be supplied by Total.  The Pabóns have been

--------------------------------------------

      [1]As Total notes, Merlino v. Getty Petroleum Corp., relied upon by the
Pabóns, is distinguishable in that Getty was a distributor not related or affiliated
to a refinery, who controlled its own trademark.  The retailers were using its
trademark and not the trademark of the refiner that supplied the fuel at their
stations.  In Merlino, the court made it clear that "the PMPA was designed to
regulate the marketing practices of large, vertically integrated oil companies. We
see no indication that Congress intended to reach non-integrated entities such as
non-refiner-distributors who control their own trademarks."  Merlino v. Getty
Petroleum Corp., 916 F.2d at 53-54.  This is not a PMPA claim.

CIVIL 09-1402 (CCC)                    28

operating the station and selling non-branded products while bearing the Total temporary branding.

An injury will only be considered irreparable if no adequate remedy for the injury exists at law.  See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986); see also 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1, at 149-51 (2d ed. 1995).  Monetary damages are generally not considered irreparable injuries.  See DeNovellis v. Shalala, 135 F.3d at 64 ("[A] temporary loss of income which may be recovered later does not usually constitute irreparable injury.").  It is not necessary for plaintiff to establish that denial of injunctive relief would be fatal to its business; it is sufficient for plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d at 19 (citing, e.g., K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989)).  Indeed, "where federal statutory violations are involved, courts have interpreted that 'only a bare minimum showing of irreparable harm is required before a court may issue injunctive relief.'" San Juan Cable LLC v. Telecomm. Regulatory, 598 F. Supp. 2d 233, 235 (D.P.R. 2009) (quoting Century-ML Cable Corp. v. Díaz, 43 F. Supp. 2d 166, 172 (D.P.R. 1998)).  Evaluating irreparable harm and its likelihood of success on the merits must be considered together.  The greater the likelihood of success on the merits, the less

CIVIL 09-1402 (CCC)                    29

required showing of irreparable harm.  "[W]hen the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief."  E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 743 (1st Cir. 1996).

        Plaintiff has made a requisite showing that without the preliminary injunction it would lose incalculable revenues and sustain harm to its goodwill.  Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d at 19.  The incalculable damage is lost revenues, harm to plaintiff's reputation, and alienation of future customers.  "By its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages."  Id. at 20 (citing K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d at 915).  "In a trademark action, a showing of confusion as to the source of a product ordinarily will establish that a risk of irreparable harm exists to the reputation of the trademark sought to be protected."  Gen. Motors Corp. v. Gibson Chem. & Oil Corp., 786 F.2d at 109.  In the absence of an injunction, plaintiff would face substantial risks through its immediate inability to properly monitor and exercise control over its pumps, and related equipment at the site, except for the gasoline storage tanks.  A denial of injunction could expose plaintiff to general liability, and in particular, liability regarding environmental regulations.  These issues, but especially the trademark violation,  are enough to show that the

CIVIL 09-1402 (CCC)                    30

plaintiff would suffer irreparable harm absent an injunction before a court ruling on plaintiff's claims.

(3) BALANCE OF HARDSHIPS

"Weighing the hardships of each party is a fact-driven exercise."  Telerep Caribe, Inc. v. Zambrano, 146 F. Supp. 2d at 145.  While the Pabóns might  suffer the hardship of ceasing operations until the final ruling has been made in this case, if the court were to order eviction, they do not have the right to use the Total trade dress.  The real damage to Total's reputation is great, and will only increase with time.  Trademark law is designed to "quickly and easily assures a potential customer that *this* item–the item with this mark–is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past."  Qualitex Co. v. Jacobson Prod. Co., 514 U.S. 159, 164 (1995).  Whether intentionally or not, the Pabóns' actions are harmful to both consumers and plaintiff.   Plaintiff has presented evidence and argument in relation to the balancing test. The defendants possess Total's pumps and related equipment, but sell unbranded gasoline and they definitely have no right to sell non-branded gasoline using Total's pumps and equipment.  This having been said, it is plainly obvious that the balance of hardships leans in favor of the Pabóns since the gasoline station would either have to be surrendered or the gasoline dispensers and related equipment removed should injunctive relief be provisionally awarded.

CIVIL 09-1402 (CCC)                    31

(4) PUBLIC INTEREST

"It cannot be gainsaid that a court asked to dispense equitable remediation should give serious consideration to the public interest." Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d at 882.  Since the use of Total's trade dress by the Pabóns is likely to cause confusion with the consumer, the public interest is best served in the public's knowing that it is buying an unbranded gasoline. This factor thus weighs heavily in plaintiff's favor.  Not only is plaintiff's trademark being harmed, but any potential customer who relies on the strength of Total's trademarks and quality of product is being erroneously induced into purchasing petroleum products from the Pabóns' gas station, which no longer sells either Esso or Total gasoline.  The gasoline dispensers, just as the tanks, require strict testing, record keeping, monitoring, and sampling and Total cannot delegate its liability, responsibility or accountability to the Pabóns.

On the other hand, the public interest is not served by evicting the Pabóns from their own property relying on the terms of a lease which they have decided to reject.  Total argues that in this case, the Pabóns are not entitled to exercise control over the equipment for the storage and sale of petroleum products, assuming those are owned by Total.  Other than the underground storage tanks, the rest of the equipment is owned by Total.  The Pabóns insist that Total cannot evict them from their own property.  Interestingly enough, neither party develops

CIVIL 09-1402 (CCC)                    32

such a seminal issue as to the right to either evict the owners of the real property and underground storage tanks or to possess the gasoline service stations and its appurtenances under these particular circumstances.  Total argues that it has the right to occupy the site and to sublease the same to any third party for the sale of Total brand products.  (Docket No. 1, at 40, ¶ 172.)  The issue is clearly undeveloped by either party and the only party citing cases related to the issue, the Pabóns, cite cases discussing the failure of a party to develop their arguments.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  However, that the issue is not developed does not mean that the court may ignore the same.  Nor can the court grant the motion for surrender of the premises based upon the gossamer showing Total has presented.

Total does not have the right to evict the Pabóns from their gasoline service station, nor does it have the right to remove equipment which is attached to the real property in such a way that removing the same would cause damage to it.  See P.R. Laws Ann. tit. 31, § 1043(3).  Indeed, in order to carry out the business of a gasoline service station, the equipment such as hoses and dispensers, are essential to the nature of the business itself.  See P.R. Laws Ann. tit. 31, § 1043(5). At very least, for the purpose of injunctive relief, it is clear that "[e]very possessor has a right to be respected in his possession . . . . " P.R. Laws Ann. tit. 31, § 1461; see I José Puig Brutau, Fundamentos de Derecho Civil III, 51-52

CIVIL 09-1402 (CCC)                    33

(Barcelona 2d ed. 1971).  While seeking remedies under the Lanham Act, which is the jurisdictional basis for this action, Total has not shown that it has the right to dispossess the Pabóns of their own property.  Lessors and lessees have certain obligations and the failure to comply with such obligations results in rescission of the lease or sublease or indemnity for damages.  See generally P.R. Laws Ann. tit. 31, §§ 4051-53 (1999).  Finally, the public interest is not served by ignoring the rights of possession which the Pabóns have through ownership of the real property.  Difficult as it might be to determine the damages resulting from not possessing the gasoline station, the calculation is not impossible.

III.  CONCLUSION

Plaintiff has shown that it is likely to prevail on the merits based upon defendants' violations of the Trademark Dilution Revision Act in particular, and the Lanham Act in general.  Plaintiff's injury cannot be readily measured under the circumstances and such injury continues each day plaintiff does not have possession of the gasoline service station which no longer sells its gasoline and which exhibits its distinctive trade dress and color patterns.  Were the court to decide that somehow the injury is repairable, or measurable, the strength of likelihood of success would yet carry controlling weight.  Plaintiff has presented evidence as to what hardship it is experiencing with the current condition of the service station and the violations of law.  Finally, the public interest is not served

CIVIL 09-1402 (CCC)                    34

by trademark dilution and tarnishment, misleading customer inducement, and the general confusion caused by the exhibition of a famous trade dress.

For the foregoing reasons, I recommend that the court GRANT plaintiff's motion for the issuance of a preliminary injunction as follows:

Defendants SANTOS PABÓN-GARCÍA; JOSÉ ANTONIO PABÓN-GARCÍA, his wife ELIZABETH SANTIAGO RIVERA, THE CONJUGAL PARTNERSHIP BETWEEN THEM; SIXTO PABÓN-GARCÍA; their agents, employees, and assignors are enjoined from using, infringing, diluting, tarnishing or otherwise using, exhibiting or altering TOTAL marks, trade dress, and color patterns, including the TOTAL color pattern of green for premium gasoline and blue for regular gasoline on the gasoline dispensers, in combination, and the red with white trim band colors on the station canopy fascia.  Consequently the defendants are to allow TOTAL personnel to remove the veiled ESSO oval sign from the  gasoline station premises.

I further recommend that the court DENY the request of TOTAL to issue an order for the defendants to immediately cease selling non-TOTAL petroleum products from the Patillas service station; and that the court DENY the request to immediately surrender control and possession over the service station and all equipment for the storage and sale of petroleum products leased or owned by TOTAL.

CIVIL 09-1402 (CCC)                    35

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 29th day of June,  2009.

S/ JUSTO ARENAS
Chief United States Magistrate Judge