IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOTAL PETROLEUM PUERTO RICO
CORPORATION

Plaintiff

vs                                                    CIVIL 09-1402CCC

JAVIER TORRES-CARABALLO, his wife,
NERIMAR PEREZ-MALDONADO, the
conjugal partnership between them;
HIRAM ANDREU-SOTO, his wife, NORA
BENABE-BENABE, the conjugal
partnership between them;
JOSE MANUEL BENABE-BENABE;
JULIO C. LOPEZ, his wife, CARMEN
HIYDA MERCADO-REYES, the conjugal
partnership between them;
ALUMA CONSTRUCTION, CORP.;
S-S SERVICE STATION, INC.;
JOSE L. CRESPO, his wife, ANITA
VAZQUEZ-MULERO, the conjugal
partnership between them;
SANTOS PABON-GARCIA;
JOSE ANTONIO PABON-GARCIA, his
wife, ELIZABETH SANTIAGO-RIVERA, the
conjugal partnership between them;
SIXTO PABON-GARCIA;
MICADA DE PUERTO RICO, INC.;
OTHER UNKNOWN PARTIES A, B, C

Defendants

## OPINION AND ORDER

Before the Court is the Magistrate's Report and Recommendation **(docket entry 68)** on plaintiff Total Petroleum Puerto Rico Corporation's (Total) motion (docket entry 5) requesting that a preliminary injunction be issued against defendants José Antonio Pabón-García, Santos Pabón-García, Sixto Pabón-García and Elizabeth Santiago-Rivera (Pabóns) to enjoin them from using, infringing, exhibiting or altering its trademarks; to cease selling non-Total products at their gas station, and to surrender control and possession to plaintiff of the service station and all equipment for storage and sale of petroleum products leased to or owned by Total.

CIVIL 09-1402CCC                                    2

After reviewing the testimony and other evidence presented at the May 20, 2009 hearing, the Magistrate Judge discussed the factors dictated by law and jurisprudence as applied to the facts before him and made the following findings:

> First, the similarity of the trade dress and color patterns approach identity since the color patterns used by the Pabóns are the same as previously used by Esso and currently used by Total. The franchisee has continued to use the trade dress and color patterns of the one-time franchisor, Esso, whose dress and patterns are authorized to be used by Total. The Pabóns may also be using such dress and patterns to identify goods that are not of the same quality or source as those previously identified with the Esso marks. The continued use of the Total trade dress and/or color patterns can cause consumers to buy products in reliance on the misused trade dress. As far as similarity is concerned, '[u]nder this factor, there is a strong likelihood of confusion.'

Report and Recommendation, docket entry 68, at 18-19 (citations omitted).

> The distinctive red and white trade dress inherited from Esso that now belongs to Total remains unaltered throughout the majority of the gasoline service stations according to the testimony of Mr. Bermúdez and the exhibits attached to the verified complaint. As to the Pabóns' station in Patillas, the trade dress is identical to all other Total stations except that the white lettering is missing from the red background and the white skirt of the canopy fascia. The pumps reflect the acquired debranding Total color pattern of green for premium gasoline and blue for regular gasoline. These transitional colors are being exhibited under the agreement between Esso and Total. Thus, the consumer can very well assume that the gasoline station, a former Esso station, is either a Total station or is in transition to become one.

Id., at 24 (Citations omitted).

> Plaintiff has made a requisite showing that without the preliminary injunction it would lose incalculable revenues and sustain harm to its goodwill. . . . The incalculable damage is lost revenues harm to plaintiff's reputation, and alienation of future customers. . . . In the absence of an injunction, plaintiff would face substantial risks through its immediate inability to properly monitor and exercise control over its pumps, and related equipment at the site, except for the gasoline storage tanks. A denial of injunction could expose plaintiff to general liability, and in particular, liability regarding environmental regulations. These issues, but especially the trademark violation, are enough to show that the plaintiff would suffer irreparable harm absent an injunction before a court ruling on plaintiff's claims.

CIVIL 09-1402CCC                    3

Id., at 29-30 (citations omitted).

> Since the use of Total's trade dress by the Pabóns is likely to cause confusion with the consumer, the public interest is best served in the public's knowing that it is buying an unbranded gasoline.  This factor thus weighs heavily in plaintiff's favor. Not only is plaintiff's trademark being harmed, but any potential customer who relies on the strength of Total's trademarks and quality of product is being erroneously induced into purchasing petroleum products from the Pabóns' gas station, which no long sells either Esso or Total gasoline. The gasoline dispensers, just as the tanks, require strict testing, record keeping, monitoring, and sampling and Total cannot delegate its liability, responsibility or accountability to the Pabóns.

Id., at 31 (citations omitted).

Having found that the likelihood of success and the potential for irreparable harm to its reputation weigh heavily in Total's favor, the Magistrate Judge recommended that the Court grant the first part of the injunctive relief requested by Total and order the Pabóns to cease and desist in selling non-branded products and using the Esso/Total trade dress and colors.

Notwithstanding the conclusions of Lanham Act violations, the Magistrate Judge, in addressing Total's right to possession of the real property and the underground tanks, made the following determination:

> On the other hand, the public interest is not served by evicting the Pabóns from their own property relying on the terms of a lease which they have decided to reject....
>
> Total does not have the right to evict the Pabóns from their gasoline service station, nor does it have the right to remove equipment which is attached to the real property in such a way that removing the same would cause damage to it.  . . . Indeed, in order to carry out the business of a gasoline service station, the equipment such as hoses and dispensers, are essential to the nature of the business itself. . . . At [the] very least, for the purpose of injunctive relief, it is clear that '[e]very possessor has a right to be respected in his possession....'

Report and Recommendation, at 31-32. (Emphasis ours.)

The Magistrate Judge therefore, recommended that Total's request for the immediate surrender of control and possession of the Patillas property and all equipment for the storage

CIVIL 09-1402CCC                              4

and sale of petroleum products leased or owned by Total be denied.  He also recommends that the Court deny Total's request that defendants be ordered to immediately cease selling non-Total petroleum products while using Total's equipment.

Both the plaintiff and defendant filed objections to the Report and Recommendation (docket entries 69 and 71, respectively).  Total's objections (docket entry 69) focused on the recommendation that the Pabóns continue in possession of the Patillas property, selling non-branded products at the gas service station located on the premises.  Total's reasoning is set forth at pages 20-21 of their objections:

> . . . The Pabóns leased their property to Esso, subject to the terms and conditions included in the Lease Agreement; Esso in turn opted to sublease the property back to the Pabóns to operate a gasoline service station; Esso opted to withdraw from the Puerto Rico Market; due to the above, Esso terminated the sublease agreement with the Pabóns; the control and possession of the service station was legally returned to Esso in light of the Lease Agreement which was still in effect; Esso assigned its rights under the Lease to to TPPRC; TPPRC offered the Pabóns a sublease agreement; the Pabóns voluntarily opted to reject said offer. As a result, the Pabóns lost their right to retain possession or control over the station. TPPRC holds a valid lease which allows it to sublease the station to a third party in order to operate the service station.

The Pabóns objected (docket entry 71) to that part of the Report and Recommendation dealing with the trademarks and/or trade dress.  They argue that the recommendation is moot because they have " . . . painted the gasoline pumps and the afascia (sic)."

> As painted, there is no likelihood of confusion, and none can be imputed.  There is no similarity between Esso's trademarks and trade dress and Pabón García's service station. In these circumstances, there is nothing to enjoin, and the petition for injunctive relief should be denied on the grounds of mootness.

Defendants Objections, at 9.

CIVIL 09-1402CCC                    5

**Analysis**

The Magistrate Judge's appreciation of many facts regarding possession and control over the property in issue is inaccurate.  By virtue of Deed No. 20,  executed November 4, 1998, the Pabóns, as owners, leased the Patillas property to Esso for a twenty-year period that extends until October 31, 2018. The purpose of the lease was for Esso to operate a gasoline service station on the premises.  Said lease was assigned to Total as part of its acquisition of Esso's assets in Puerto Rico.  Relevant terms of that lease include the following:

> — THIRD: <u>Lease</u>. The Lessor [Pabóns] TRANSFERS and ASSIGNS the Property, with all of its inherent uses and rights, in lease to the Company [Esso] for the term, payment, and conditions indicated below:-----------------------------------------------------
> ….
>
> FOURTH: <u>Uses and Permits</u> -----------------------------------------------
> ----One. The Company may use the Property <u>for a person or entity designated by the Company (referred to in this deed as "Retailer") to operate on it a station for the retail sale of gasoline</u>, which will be built on it (hereinafter, the "Station"), under the name or brand designated by the Company, and to offer to consumers from the Station any other services that are normally and ordinarily offered in a station for the retail sale of gasoline. ….
>
> ----Two.  The Company states, and the Lessor recognizes, agrees, and stipulates, that the main and essential purpose that has led the Company to lease the Property is for this Station to be operated.-----------------------------------------------------------------
> ….
>
> SIXTH: <u>Equipment</u>.
>
> -----One.  Lessor recognizes and stipulates that at the time of this deed there are underground tanks for the storage of gasoline installed in the Property or in the Station, as well as equipment belonging to the Company used for the operation of the Station. All of the equipment belonging to the Company, including the underground tanks, which is currently installed in the Property or is installed in the future by the Company in the Property or the Station, and all of the substitute, replacement, and additional equipment that belongs to the Company (all of such equipment

> belonging to the Company, including underground tanks, is referred to in this deed jointly as "Equipment"), is and will be by its nature, movable property and will not lose its movable nature no matter how or where it is or is fixed to or placed underground in the Property.---------------------------------------------------------------
>
> ....
>
> NINTH: <u>Assignment and Sublease</u>. <u>The Company may assign this contract and sublease part or all of the Property or the Station without the Lessor's prior consent</u>. If the Company assigns this contract, it will notify the Lessor the name and address of the assignee----------------------------------------------------
> ....
>
> EIGHTEENTH [sic]. Successors. <u>The rights and obligations of the parties under this lease contract will benefit and bind successors in interest</u>.------------------------------------------------------------------------------

English translation, docket entry 49, Exhibit 8, and docket entry 89 (our emphasis).

The right of Esso to assign the lease of the property to Total, without the Pabóns' consent, is expressly provided for in the Ninth section of the Lease Agreement with the Pabóns and has not been challenged.  The Lease Agreement refers only to a third "person or entity designated by  the Company (referred to in this deed as "retailer") to operate on it a station for the retail sale of gasoline...."  We find nothing in this lease, nor in any other document,  that restricts subleasing the property only to it's owners. In sum, both the Magistrate Judge and the Pabóns have taken the unsupportable position that the Pabóns should not be "evicted" from their own property, completely ignoring the contractual reality that provided for the assignment by Esso of its Lease Agreement with the Pabóns upon giving notice to the latter, given the undisputed right of Esso to assign its lease contract with the Pabóns.  It did exactly that on April 22, 2008 (plaintiff's Exhibit 10 to the Complaint), proceeding to notify the Pabóns , as owners of the property, of the assignment of the lease to Total.  The property, therefore, was leased to Total as assignee of the November 4, 1998 lease contract, which is still in effect and which obligates the Pabóns during its entire term,

CIVIL 09-1402CCC                                          7

until October 31, 2018.  That lease contract also gives Total the right to use the Patillas property for the purpose of operating a Total retail gas station during such period.

For the above-stated reasons, the Magistrate Judge Report and Recommendation that the Motion for Preliminary Injunction **(docket entry 68)** be granted in part and denied in part is ADOPTED only with regard to the findings and conclusions relevant to the Lanham Act violations and is REJECTED as to his recommendation that the Court deny Total's request for an order that defendants immediately cease selling non-Total products at the Patillas gas station, and to surrender control and possession to plaintiff of the service station and all equipment for storage and sale of petroleum products leased to or owned by Total.

Accordingly, the Motion for Preliminary Injunction is GRANTED in its entirety.  A preliminary injunction shall be entered enjoining defendants José Antonio Pabón-García, Santos Pabón-García, Sixto Pabón-García and Elizabeth Santiago-Rivera from using the Esso/Total trade dress and colors from selling non-Total products at their gas station; and further ordering them to surrender control and possession to Total Petroleum Puerto Rico Corporation of the service station and all equipment for storage and sale of petroleum products leased to or owned by it.

SO ORDERED.

At San Juan, Puerto Rico, on December 14, 2009.


S/CARMEN CONSUELO CEREZO
United States District Judge